1   MAGGY ATHANASIOUS, Bar No. 252137
    mathanasious@littler.com
2   LITTLER MENDELSON, P.C.
    2049 Century Park East, 5th Floor
3   Los Angeles, California  90067.3107
    Telephone:    310.553.0308
4   Facsimile:    310.553.5583

5   Attorneys for Defendants
    PACIFIC GYPSUM SUPPLY, INC. D/B/A J & B
6   MATERIALS, INC. and GYPSUM
    MANAGEMENT AND SUPPLY, INC.

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11

12  EDUARDO LOPEZ LOPEZ on behalf of          Case No. _____
    himself and others similarly situated,
13                                            **DEFENDANTS' NOTICE TO FEDERAL**
                        Plaintiff,            **COURT OF REMOVAL OF CIVIL**
14                                            **ACTION PURSUANT TO 28 U.S.C. § 1332**
            v.
15                                            Complaint filed: November 19, 2018
    PACIFIC GYPSUM SUPPLY, INC.
16  D/B/A J & B MATERIALS, INC.;
    GYPSUM MANAGEMENT AND
17  SUPPLY, INC.; and DOES 1 to 100,
    inclusive,
18
                        Defendants.
19

20

21

22

23

24

25

26

27

28

Defendants' Notice to Federal Court of
Removal of Civil Action

1  **TO THE CLERK OF THE ABOVE ENTITLED COURT AND PLAINTIFF EDUARDO**

2  **LOPEZ LOPEZ AND HIS COUNSEL OF RECORD:**

3      PLEASE TAKE NOTICE that Defendants Pacific Gypsum Supply, Inc. d/b/a J & B

4  Materials, Inc. ("Pacific Gypsum") and Gypsum Management and Supply, Inc.[1] ("GMS"),

5  (hereinafter collectively "Defendants"), hereby effect the removal of the action entitled *Eduardo*

6  *Lopez Lopez v. Pacific Gypsum Supply, Inc. d/b/a J & B Materials, Inc., et al,* Case No. C18-02320,

7  from the Superior Court of the State of California for the County of Contra Costa to the United

8  States District Court for the Northern District of California.  This removal is based on 28 U.S.C. §§

9  1332(a) and 1332(d) and, specifically, on the following grounds:

10 **I.     STATEMENT OF JURISDICTION**

11     1.     This Court has original jurisdiction over this action under both 28 U.S.C. Section

12 1332(a) (the diversity of citizenship statute) and 28 U.S.C. Section 1332(d) (CAFA).  Grounds to

13 remove the case to this Court exist because, in relevant part, the diversity statute grants district

14 courts original jurisdiction over civil actions where the matter in controversy exceeds the sum or

15 value of $75,000, exclusive of interest and costs, and is between citizens of different states.  Further,

16 the Class Action Fairness Act of 2005 ("CAFA" or the "Act"), in relevant part, grants district courts

17 original jurisdiction over civil class actions filed under federal or state law in which a plaintiff or any

18 member of the putative class the plaintiff seeks to represent is a citizen of a state different from any

19 Defendants, and where the amount in controversy for the putative class members in the aggregate

20 exceeds the sum or value of $5,000,000, exclusive of interest and costs.  Here, as set forth below,

21 Plaintiff Eduardo Lopez Lopez is a citizen of the State of California and Defendants are citizens of

22 Georgia with their principal places of business in Georgia, and the amount in controversy, exclusive

23 of interests and/or costs, for Lopez Lopez individually exceeds $75,000, and for putative class

24 members in the aggregate exceeds $5,000,000 as shown hereafter.  Accordingly, this case meets all

25

26 ———————————
[1] Plaintiff incorrectly named Gypsum Management and Supply, Inc. as a defendant in this case.

27 Gypsum Management and Supply, Inc., which is the corporate parent of Pacific Gypsum, has no direct operations in California.  Accordingly, it is clearly an improper defendant and not properly

28 subject to the Court's jurisdiction.  Pacific Gypsum is the subsidiary company which operates in California and has California employees, and therefore is the only proper defendant.

Defendants' Notice to Federal Court of
Removal of Civil Action

requirements for removal and is timely and properly removed to this Court by the filing of this Notice.

## II.     VENUE

2.      The action was filed in the Superior Court of the State of California for the County of Contra Costa.  Venue properly lies in the United States District Court for the Northern District of California because it is the district court where the state court action is pending.  *See* 28 U.S.C. §§ 84(a), 1391, 1441(a).

## III.     PROCEDURAL BACKGROUND

3.      On or about November 19, 2018, Plaintiff Eduardo Lopez Lopez filed an original complaint in the Superior Court of California for the County of Contra Costa, entitled *Eduardo Lopez Lopez v. Pacific Gypsum Supply, Inc. d/b/a J & B Materials, Inc.., et al.*, Case No. 1802320 (the "Complaint").  A true and correct copy of the Summons and Complaint is attached hereto as **Exhibit A**.

4.      Plaintiff's Complaint alleges seven claims for: (1) failure to pay prevailing wages in violation of California Labor Code ("Labor Code") sections 1771, 1774, and 1194; (2) failure to provide compliant meal breaks in violation of Labor Code sections 226.7 and 512; (3) failure to provide compliant rest breaks in violation of Labor Code sections 226.7; (4) failure to pay all vacation wages due in violation of Labor Code section 227.3; (5) failure to adequately indemnify employees for employment-related losses/expenditures in violation of Labor Code section 2802; (6) failure to provide complete and accurate wage statements in violation of Labor Code section 226; (7) failure to timely pay unpaid wages due at time of separation of employment in violation of Labor Code sections 201, 202 and 203; and (8) violation of California Business & Professions Code sections 17200 *et seq*.

5.      Plaintiff asserts these claims on behalf of himself and on behalf of a putative class consisting of all hourly, non-exempt employees[2] working for Defendants in the state of California during the relevant statutory period.  (*See* Compl., at ¶¶ 1, 2, 38.)

---

[2] Plaintiff's Complaint repeatedly makes it clear in allegations made throughout the Complaint that he seeks to represent all of Defendants' hourly, non-exempt employees in California.  (*See* Compl.,

Defendants' Notice to Federal Court of Removal of Civil Action

3.

6.     On January 15, 2019, Plaintiff served the Complaint and Summons on Defendants. *See* **Ex. A**.

7.     Pursuant to 28 U.S.C. § 1446(d), attached as **Exhibit B**, are all process, pleadings, and orders served on Defendants or filed or received by Defendants in this action.

8.     To Defendants' knowledge, no further process, pleadings, or orders related to this case have been filed in Contra Costa County Superior Court or served by any party.

## IV.    NOTICE TO STATE COURT AND PLAINTIFF'S COUNSEL

9.     At or about the time of filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of the removal will be given by the undersigned to Plaintiff's Counsel of Record, Joseph Lavi and Sahag Majarian II of Lavi &

---

at ¶ 1 ("This Court has jurisdiction over Plaintiff and similarly-situated current and former California-based hourly non-exempt employees claims"), ¶ 2 ("The named Plaintiff and the classes of persons on whose behalf this action is filed are current, former and/or future employees of Defendants who worked, work, or will work for Defendants as non-exempt hourly employees in California.").) However, later in his Complaint, within his allegations regarding the class, Plaintiff includes allegations about 7 different groups of plaintiffs he seeks to represent, and appears to define each group in terms of employees who experienced the particular legal violation he is referring to. (*Id.* At ¶ 38(a)-(g).)  To the extent that Plaintiff is attempting to define the class of individuals he is seeking to represent in terms of those who only experienced an actual legal violation, this makes no logical sense and puts the cart before the horse.  This would require Plaintiff to establish actual liability on behalf of each putative class member *before* the class of employees he seeks to represents would be ascertainable.  This is an improper "fail safe" class definition.  *See Kamar v. Radio Shack Corp.*, 375 Fed. Appx. 734, 736 (9th Cir. 2010) (A "failsafe class" is "a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established.").  Such class definitions are repeatedly rejected by courts in this Circuit. *See Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (striking the class definition where the class was in part defined based on defendant's liability); *Velasquez v. HSBC Fin. Corp.*, No. 08-4592 SC, 2009 WL 112919 at *4 (N.D. Cal. Jan. 16, 2009) (where a class is defined by the merits of the legal claims, the class is unascertainable prior to a finding of liability).  Further, even if such a class definition were acceptable (and it is not), the starting point for a determination of who was in the class would inevitably be all hourly employees of Defendant who all potentially experienced such a violation.  Thus, in the end and no matter how you read them, Plaintiff's class allegations are functional equivalent of asserting claims on behalf of all hourly, non-exempt employees of Defendant, and this is the proper class for purposes of amount in controversy calculations.  Moreover, because Plaintiff, as the master of his own Complaint, repeatedly asserts throughout the Complaint that he represents all hourly, non-exempt California employees, Defendants are entitled to believe him and calculate the amount in controversy on this basis.  And, still further, Defendants' amount in controversy calculations, as set forth below, look only at those employees who could have possibly experienced an alleged legal violation based on the number of hours they worked, the termination of their employment, or other precipitating events necessary for the causes of action alleged.  Consequently, Defendants' amount in controversy calculations are narrowly tailored based on only those hourly, non-exempt employees who potentially experienced the legal violations alleged by Plaintiff.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of Removal of Civil Action

4.

Ebrahimian, LLP and Law Offices of Sahag Majarian II, respectively, and a copy of this Notice of Removal will be filed with the Clerk of the Superior Court for the County of Contra Costa as required by 28 U.S.C. § 1446(d).

## V. TIMELINESS OF REMOVAL

10. This Notice of Removal is timely filed as it is filed within thirty (30) days of January 15, 2019, the date of service of the Summons and Complaint and within one year from the commencement of this action. *See* 28 U.S.C. § 1446(b).

## VI. DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. § 1322(a)

11. The diversity of citizenship statute provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between --- (1) citizens of different States . . .." *See* 28 U.S.C. § 1332(a).

12. "Any civil action" commenced in state court is removable if it might have been brought originally in federal court. *See* 28 U.S.C. § 1441(a). Any case that could have been commenced in federal court based on diversity of citizenship can be removed from state court on this ground. *See* 28 U.S.C. § 1441(b). In order to remove a case to federal court on diversity grounds, two basic elements must be satisfied: (1) complete diversity must exist between the parties (i.e., Plaintiff and Defendants must be "citizens" of different states); and (2) the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332.

13. For purposes of removal, the citizenship of doe defendants are disregarded and only the named defendants are considered. 28 U.S.C. § 1441(a); *accord Newcombe v. Adolf Coors Co*., 157 F.3d 686, 690-91 (9th Cir. 1998); *Fristoe v. Reynolds Metals Co*., 615 F.2d 1209, 1213 (9th Cir. 1980). Further, in a class action, only the citizenship of the named parties is considered for diversity purposes and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 339-40 (1969) (noting that in a class action under § 1332(a), only the citizenship of the named parties counts for purposes of determining "complete diversity").

14. According to the Complaint, Plaintiff resides in the state of California (Compl., at ¶ 2.) Accordingly, Defendants alleges that Plaintiff is a citizen of California. *See* 28 U.S.C. §

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

5.

1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *see also Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (residency can create a rebuttable presumption of domicile supporting diversity of citizenship).

15.    For diversity purposes, the citizenship of a corporation shall be determined by looking to the state in which it has been incorporated and where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).  A corporation's "principal place of business refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities."  *Goens v. Adams & Assocs., Inc.*, 2017 WL 3167809, at *3 (E.D. Cal. July 26, 2017) *citing Hertz Corp.*, 599 U.S. 77, 80-81.

16.    Defendants are both incorporated under the laws of the State of Georgia and have their principal place of business in Georgia, where they are headquartered and perform their executive and administrative functions.  (Declaration of Amy Young in support of Defendants' Notice of Removal ("Young Decl."), attached as **Exhibit C**, ¶¶ 3-4.)  The vast majority of Defendants' managers and officers reside and work outside of California.  (*Id.*)  Accordingly, Defendants are both citizens of a state other than California.

17.    Defendants Does 1 through 100, inclusive, are fictitious and their citizenship must be disregarded for the purposes of determining diversity jurisdiction.  *See* 28 U.S.C. § 1441(a); *see also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

18.    Diversity of citizenship exists here because Plaintiff and Defendants are citizens of different states, in that Plaintiff is a California citizen and Defendants are citizens of Georgia.

19.    Accordingly, this action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(a) and which may be removed to this Court by Defendants pursuant to 28 U.S.C. § 1441(a) based on the existence of complete diversity of citizenship between the real parties to this action – Plaintiff and Defendants – and because the amount in controversy well exceeds $75,000, as set forth below.  Further, because there is complete diversity of citizenship between the named Plaintiff and Defendants, and the named Plaintiff has individual claims with an amount in controversy in excess of $75,000, the Court has "supplemental jurisdiction over claims of

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

6.

1  unnamed class members irrespective of the amount in controversy in those claims[.]" *Kanter v.*

2  *Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir., 2001).

3      A.    **Amount in Controversy for Plaintiffs' Individual Claims Exceeds $75,000**

4          **(1)    Plaintiff's Claim for Failure to Provide Meal Periods**

5      20.    With respect to his Second Cause of Action, Plaintiff alleges that "Defendants **often**

6  employ non-exempt employees, including the Plaintiff and all others similarly situated, for shifts of

7  five (5) hours or more in length." (Compl., at ¶ 17.)  Plaintiff also asserts that "Defendants. . .

8  maintained a **policy, practice, and/or procedure** that failed to authorize or permit Plaintiff and

9  similarly situated hourly non-exempt employees to take legally compliant meal breaks before the

10  sixth hour of work." (*Id.* at ¶ 18.)  Plaintiff claims that "Defendants **frequently** failed to provide

11  Plaintiff and members of the Meal Period Class with meal breaks prior to the end of the 5th hour for

12  first meal periods."  (*Id.* at ¶ 51.)  Plaintiff further alleges that "Defendants maintained a **policy,**

13  **practice, and/or procedure** whereby they failed to provide their employees with premium wages

14  for these non-compliant meal periods."  (*Id.* at ¶ 19.)

15      21.    Plaintiff seeks to recover meal period premiums of "an additional hour of pay at the

16  regular rate" dating back four years from the filing of the Complaint to November 19, 2014.  *See*

17  Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (Compl. at ¶¶ 38(b), 54, Count II, "Prayer for Relief" on

18  the Second Cause of Action.)

19      22.    Plaintiff alleges that pursuant to "a policy, practice, and/or procedure" he and other

20  putative class members "frequently" failed to receive appropriate meal breaks and are thus entitled to

21  penalties.  (Compl. at ¶¶ 18, 51.)  Assuming Plaintiff's allegations of a general **policy and**

22  **procedure** of failing to provide proper breaks are true, and taking into account Plaintiff's failure to

23  cabin his allegations in any way and, instead, pleading his claims as expansively as possible;

24  Defendants are entitled to assume a 100% violation rate for amount in controversy calculations.  *See*

25  *Coleman          v.          Estes          Express          Lines,          Inc.*,

26  730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) (Plaintiff included no limitation on the number of

27  violations, and, taking his complaint as true, Defendants could properly calculate the amount in

28  controversy based on a 100% violation rate."); *see Muniz v. Pilot Travel Ctrs. LLC*,

Defendants' Notice to Federal Court of          7.
Removal of Civil Action

No. CIV. S-07-0325FCDEFB, 2007 WL 1302504, at **11-13 (E.D. Cal. May 1, 2007) (finding plaintiff's complaint revealed that she "allege[d] her claims in terms as general and expansive as possible," and in effect plaintiff "include[d] no fact-specific allegations that would result in a putative class or violation rate [...] discernibly smaller than [the] 100%, used by defendant in its calculations"); *accord Ford v. CEC Entertainment, Inc.*, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) (where plaintiff alleged defendant "regularly" required class to work without pay, and implemented "systematic, company-wide policy to not pay rest period premiums," defendant's calculation as to amount in controversy based on "assumption of a 100% violation rate" was "reasonably grounded in complaint").

23.    Plaintiff's average hourly rate during the period from May, 2016 to October, 2017[3] was $14.13.[4] (Young Decl., ¶ 21.) Based on Plaintiff's employee history for the time period of May, 2016 through October, 2017, there were at least 358 days when Plaintiff worked five or more hours. (Young Decl., ¶ 22.) Plaintiff's allegations fail to specify or even provide an approximate count of non-compliant meal periods. Instead, Plaintiff vaguely alleges that he "frequently" experienced non-compliant meal periods pursuant to an expansive a "policy, practice, and/or procedure." (Compl., at ¶¶ 18, 51.) Assuming a meal period violation occurred each time Plaintiff worked five or more hours, the meal period claim places at least **$5,058**[5] in controversy.

---

[3] Pacific Gypsum only had readily accessible pay and time data for Plaintiff for the time period of May, 2016 through October 26, 2017. (Young Decl. ¶ 20.) Consequently, Plaintiff's damages calculations are based on pay and time data from May, 2016 through October 26, 2017. However, Plaintiff alleges he worked for Pacific Gypsum until June 12, 2018, thus Defendant's amount in controversy calculations reflect a conservative estimate based only on the actual data available at the time of removal. (*See* Compl. at ¶ 2) (Plaintiff alleges his employment ended on June 12, 2018.)

[4] The average hourly rate was calculated by using Plaintiff's actual pay history from the relevant time that he worked for Pacific Gypsum. Plaintiff's actual pay rate during each week he worked was totaled (one pay rate per week) and then divided by the total weeks to get his average hourly rate of pay. (Young Decl.,¶ 12.)

[5] Defendants' estimated amount in controversy for Plaintiff's individual meal break claims reflects a conservative estimate based only on the actual data accessible at the time of removal, from the time period of May, 2016 through October, 2017. The amount in controversy for this claim would be significantly larger if Defendants were to assume similar potential damages for the remainder of Plaintiff's employment—from October, 2017 through June, 2018.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

8.

### (2)     Plaintiff's Claim for Failure to Provide Rest Breaks

24.     With respect to Plaintiff's Third Cause of Action, Plaintiff alleges that "Defendants **often** employ non-exempt employees, including the named Plaintiff and others similarly-situated, for shifts longer than 3.5 hours in length." (Compl., at ¶ 20.)  Plaintiff also alleges that "Defendants employed a **policy and procedure** which failed to provide Plaintiff and other similarly-situated hourly non-exempt employees rest periods. Defendants also failed to pay employees one hour of pay at their regular rate of pay for each workday Plaintiff and other similarly-situated hourly non-exempt employees did not receive legally compliant rest breaks." (*Id*. at ¶ 23.)

25.     Plaintiff seeks to recover rest period premiums dating back four years from the filing of the Complaint, to November 19, 2014.  *See* Cal. Bus. & Prof. Code §§ 17200 *et seq*.; (Compl. at ¶¶ 22, 38(c), Count III, "Prayer for Relief" on the Third Cause of Action.)

26.     In *United Parcel Service, Inc. v. Superior Court (Allen)*, 196 Cal. App. 4th 57, 69 (2011), the Court held that should Plaintiff sustain his burden of proof, he could be entitled to one hour of premium pay for one or more missed meal period *and* one hour of premium pay for one or more missed rest break in a single day.

27.     Plaintiff alleges that pursuant to "a policy and procedure" he and other putative class members "often" failed to receive appropriate rest breaks and are thus entitled to penalties. (Compl. at ¶¶ 20, 23.)  Assuming Plaintiff's allegations of a general **policy and procedure** of failing to provide proper breaks are true, and taking into account Plaintiff's failure to cabin his allegations in any way and, instead, pleading his claims as expansively as possible; Defendants are entitled to assume a 100% violation rate for amount in controversy calculations.  *See Coleman*, 730 F. Supp. 2d at 1150 (Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate."); *see Muniz*, 2007 WL 1302504, at **11-13 (finding plaintiff's complaint revealed that she "allege[d] her claims in terms as general and expansive as possible," and in effect plaintiff "include[d] no fact-specific allegations that would result in a putative class or violation rate [...] discernibly smaller than [the] 100%, used by defendant in its calculations"); *accord Ford*, 2014 WL 3377990, at *3 (where plaintiff alleged defendant "regularly" required class to work without pay,

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

9.

1  and implemented "systematic, company-wide policy to not pay rest period premiums," defendant's

2  calculation as to amount in controversy based on "assumption of a 100% violation rate" was

3  "reasonably grounded in complaint").

4       28.    As explained above, Plaintiff's average hourly rate during the period from May, 2016

5  to October, 2017[6] was \$14.13.  (Young Decl., ¶ 21.)  Based on Plaintiff's time data for the time

6  period of May, 2016 to October, 2017, there were 362 days when Plaintiff worked 3.5 or more

7  hours.  (Young Decl., ¶ 25.)  Plaintiff's allegations fail to specify or even provide an approximate

8  count of non-compliant rest breaks.  Assuming a rest break violation occurred each day Plaintiff

9  worked over 3.5 hours, Plaintiff's rest break claim places at least **\$5,115**[7] in controversy.

10            **(3)     Plaintiff's Inaccurate Wage Statement Claim**

11       29.    Plaintiff also asserts a claim for violation of Labor Code section 226.  (Compl., at ¶¶

12  77-88.)  Labor Code section 226(a) requires that employers provide employees with "an accurate

13  itemized statement in writing" listing specified information at the time wages are paid.  Labor Code

14  § 226(a).  Labor Code section 226(e) provides for penalties in the amount of "fifty dollars for the

15  initial pay period in which a violation [of subdivision (a)] occurs and one hundred dollars (\$100) per

16  employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four

17  thousand dollars (\$4,000)."  Plaintiff's wage statement claim is governed by a one-year statute of

18  limitations.  Cal. Code Civ. Proc. § 340 (one-year statute of limitations governs claims for penalties).

19       30.    Based on Plaintiff's allegation that "Defendants knowingly and intentionally put in

20  place practices which deprived employees of wages and resulted in Defendants' knowing and

21  intentional providing of inaccurate wage statements" (Compl., at ¶ 84), putative class members

---

[6] Pacific Gypsum only had readily accessible pay and time data for Plaintiff for the time period of May, 2016 through October 26, 2017.  (Young Decl., ¶ 20.)  Consequently, Plaintiff's damages calculations are based on pay and time data from May, 2016 through October 26, 2017.  However, Plaintiff alleges he worked for Pacific Gypsum until June 12, 2018, thus Defendant's amount in controversy calculations reflect a conservative estimate based only on the actual data available at the time of removal.  (*See* Compl. at ¶ 2) (Plaintiff alleges his employment ended on June 12, 2018.)

[7] Defendants' estimated amount in controversy for Plaintiff's individual rest break claims reflects a conservative estimate based only on the actual data accessible at the time of removal, from the time period of May, 2016 through October, 2017.  The amount in controversy for this claim would be significantly larger if Defendants were to assume similar potential damages for the remainder of Plaintiff's employment—from October, 2017 through June, 2018.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

10.

would potentially be entitled to penalties for each wage statement issued because the itemized wage statement would be "inaccurate" for each pay period. Assuming the maximum statutory penalty[8], due to Plaintiff's failure to include any limitations as to his inaccurate wage statement allegations, the potential amount in controversy for this claim alone is **$4,000.**

### (4)    Plaintiff's Claim for Waiting Time Penalties

31.    With respect to Plaintiff's Seventh Cause of Action, Plaintiff alleges that Defendants "failed to pay Plaintiff and members of the Waiting Time Class all wages earned and unpaid prior to termination[.]" (Compl., ¶ at 92.) Plaintiff also alleges that "Defendants maintained a **policy or practice** of not paying hourly employees upon separation of employment wages for all unpaid wages[.]" (*Id.*)

32.    The relevant statute of limitations for Plaintiffs' claim for waiting time penalties for failure to pay all wages owed at separation (Compl., at ¶¶ 89-98) is three years. *See Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010). Thus the relevant statutory time period for Plaintiff's alleged waiting time penalties claim dates back to November 19, 2015.

33.    Based on Plaintiffs' termination date on June 12, 2018 and his allegations that "Defendants' failure to pay Plaintiff and members of the Waiting Time Class all unpaid wages or unreimbursed expenses prior to termination timely in accordance with Labor Code Sections 201 or 202 was willful" (Compl., at ¶ 93), thirty days of waiting time penalties would be owed to Plaintiff. *See Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998).

34.    Accordingly, based on the 9.1 average hours Plaintiff worked per day calculated using Plaintiff's employee history and time data, and the average hourly rate of $14.13, multiplied by the 30 day statutory maximum, the amount in controversy on Plaintiff's failure to timely pay wages at separation claim is **$3,857.49**. (Young Decl., ¶¶ 23, 26.)

---

[8] Courts routinely uphold amount in controversy calculations that rely on the maximum recoverable penalty per employee and thus assume a $4,000 recovery per employee during the relevant statutory time period. *See, e.g., Feao v. UFP Riverside, LLC*, No. CV-17-3080 PSG (JPRx), 2017 WL 2836207 at *4 (finding reasonable calculations which assume a 100% violation rate and multiplying the maximum recovery of $4,000 per the number of employees in the year prior to filing the complaint).

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action                    11.

**(5)    Plaintiff's Claim for Violation of California Business and Professions Code**

35.    Plaintiff's Eighth Cause of Action alleges that Defendants violated California's Business and Professions Code, sections 17200 et seq., by "[t]he unlawful conduct of Defendants alleged herein . . . [which] includes Defendants' use of policies and procedures which resulted in Defendants' failure to provide the following to Plaintiff and members of the California Class: prevailing wages where applicable; legally compliant meal periods or meal period premium wages; legally compliant rest periods or rest period premium wages;  accrued vacation pay, indemnification for necessary expenditures incurred by employees in the discharge of their duties; complete and accurate wage statements, and timely payment of final wages[.]"  (Compl., at ¶ 100.)  Business and Professions Code section 17206(a) provides for a civil penalty not to exceed $2,500.00 for each violation of unfair business practices.  While the civil penalty is recovered by the city attorney or State Attorney General, not an individual plaintiff, such civil penalties are still considered for determining amount in controversy where they are alleged in the Complaint.  *See American Guaranty Co. v. Caldwell*, 72 F.2d 209 (9th Cir. 1934) ("It is amount in controversy which determines jurisdiction, not the amount of the award.").  Assuming Plaintiff seeks restitution for just five of the seven alleged unfair business practices, Defendants could be penalized **$12,500.**

**(6)    Plaintiff's Claim for Attorneys' Fees**

36.    Plaintiff also seeks attorneys' fees and costs (*see* Compl., at Prayer for Relief), which the Court should consider and include in the amount in controversy since the California Labor Code allows such recovery.  *See, e.g., Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (attorneys' fees provided by statute are properly included in evaluating the amount in controversy); *Guglielmino*, 506 F.3d at 700 ("Section 1332(a)'s amount-in-controversy requirement excludes only 'interest and costs' and therefore includes attorneys' fees.").

37.    Should Plaintiff prevail on his individual claims, he would be entitled to attorneys' fees under a number of California statutes.  Rates awarded to the claiming attorneys in previous actions and rates awarded to attorneys of comparable experience in other cases in the same market are often looked to in determining reasonable attorneys' fees.  *See Margolin v. Regional Planning*

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

12.

*Comm'n*, 134 Cal.App.3d 99 (1982).  Attorneys' fees for individual claims based on California Labor Code violations often extend to a range of $70,000-$150,000.  *See Aleman v. AirTouch Cellular*, 209 Cal.App.4th 556, 583 (2012) (awarding attorneys' fees in the amounts of $146,000 and $140,000 to two individuals who were members of a putative class asserting labor code violations); *Martin v. The Old Turner Inn*, 2003 WL 24416020 (Cal. Superior Court 2003) (awarding $147,610 in attorneys' fees and costs to a single plaintiff in a wage and hour case); *Bandoy v. Huh*, 1996 W.L. 675975 (Cal. Superior Court 1996) (awarding $73,680 in attorneys' fees in a single plaintiff in a wage and hour case).

38.    Given the typical range of attorneys' fees awarded for similar individual claims, Defendants maintain that attorneys' fees in the amount of $50,000.00 is a very conservative and reasonable estimate of the fees Plaintiff's counsel would incur and seek recovery for as a result of litigating Plaintiff's individual claims.

39.    Analyzing the amount of a potential award of attorneys' fees for recovery on Plaintiff's individual claims alone, if successful, is particularly appropriate here for multiple reasons.  First, as this case proceeds, Plaintiff may elect not to pursue his putative class claims, or the Court may decide not to certify the proposed class that Plaintiff seeks to represent.  In such an event, Plaintiff would still be fully entitled to pursue his individual claims and, if successful, recover attorneys' fees incurred in the proceeding as allowed for under multiple California statutes that his Complaint invokes.  Thus, Plaintiff's individual claims alone place an amount of attorneys' fees in controversy independent of and without regard to the putative class allegations he has included in his Complaint.  Further, based on the allegations in Plaintiff's Complaint, the likelihood that Plaintiff is able to pursue his claims through the mechanism of a class action, nonetheless as a representative of the putative class, is marginal at best.  The claims of the class representative must be typical of the claims of the putative class.  *See* Fed. R. Civ. P. 23(a)(3).   The class representative must generally have "the same interest and suffer the same injury" as putative class members.  *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982).  Plaintiff's individual claims are not sufficiently similar to the putative class members' claims as the proposed class is currently defined.  (*See* Compl.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action                    13.

at ¶ 38.)  Accordingly, Plaintiff is not a suitable class representative and his claims are unlikely to proceed as representative of other putative class members.

### B.    Summary of Plaintiff's Individual Claims Amount in Controversy

40.    Plaintiff's allegations combined with the very conservative calculations set forth above establish that the amount in controversy for (i) meal period premiums; (ii) rest break premiums, (iii) wage statement penalties; and (iv) waiting time penalties, combined with (v) attorneys' fees, alone is at least **$80,530.49**. This amount in controversy estimate does ***not*** include the amount in controversy as to Plaintiff's prevailing wage[9], unreimbursed business expenses[10] or unpaid vacation wages[11] claims.  Thus, the amount in controversy on Plaintiff's individual claims easily exceeds $75,000.

| Claim | Amount in Controversy |
|---|---|
| Unpaid Meal Period Premiums | $5,058 |
| Unpaid Rest Break Premiums | $5,115 |
| Wage Statement Penalties | $4,000 |
| Waiting Time Penalties | $3,857.49 |
| Business & Professions Code Penalties | $12,500 |

[9] Based on Plaintiff's allegations that "Defendants failed to pay Plaintiff and similarly situated employees the prevailing wage" for their work on jobs which were subject to prevailing wage rates, Defendants assumed—as described more fully below—at least two hours of prevailing wage work per month for 3 years (the applicable statute of limitations) at a rate of $2.10 (the difference between Plaintiff's average hourly rate and the current average prevailing wage rate for a stocker job classification) resulting in an amount in controversy of at least $151.20.

[10] Based on Plaintiff's allegations that "Defendants employed a policy, practice, and procedure whereby Plaintiff" did not receive full reimbursement for "costs of operating their cell phones and physical wear to their cell phones[,]" Defendants assumed—as described more fully below—at least $500 in unreimbursed business expenses per year, or roughly $42 per month.  Thus, over the time period of March, 2015 to present, the amount in controversy for Plaintiff's unreimbursed business expenses claim would be **$1,958.02**.

[11] Based on Plaintiff's allegations that Defendants failed to pay accrued vacation/PTO wages per its policy and procedures, Defendants assumed—as described more fully below—Plaintiff seeks to recover at least 2 days of accrued unpaid vacation/PTO wages per year or $226.08 ($14.13 X 8 X 2). (Young Decl.,¶ 6.) Thus, the amount in controversy for Plaintiff's vacation/PTO wages claim is at least **$678.24**.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

14.

| Damages/Penalties Subtotal | $30,530.49 |
|---|---|
| Attorneys' Fees | $50,000 |
| **Total** | **$80,530.49**[12] |

41.    Defendants have established by a preponderance of the evidence that the amount in controversy for Plaintiff's individual claims exceed the $75,000 jurisdictional minimum for diversity jurisdiction under 28 U.S.C. § 1332(a).

42.    Further, because there is complete diversity of citizenship between the named Plaintiff and Defendants, and the named Plaintiff has claims with an amount in controversy in excess of $75,000, the Court has "supplemental jurisdiction over claims of unnamed class members irrespective of the amount in controversy in those claims[.]" *Kanter*, 265 F.3d at 858.

## VII.    CAFA JURISDICTION PURSUANT TO 28 U.S.C. § 1332(d)

43.    CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, the aggregate number of proposed plaintiffs is 100 or greater, and where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d).  CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446.  As set forth below, this case meets each CAFA requirement for removal, and is timely and properly removed by the filing of this Notice.  Specifically, this Court has jurisdiction over this case under CAFA because it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) Defendants are not states, state officials or other governmental entities; (3) there is diversity between at least one class member and one defendant; and (4) the amount in controversy for all class members exceeds $5 million.

---

[12] If Defendants were to include amount in controversy estimates for Plaintiff's remaining prevailing wage, unreimbursed business expenses and unpaid vacation wages claims the amount in controversy total would increase to **$83,662.46**.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

15.

### A.     The Putative Class Contains More than 100 Members

44.     CAFA defines a "class action" as any civil action filed under Federal Rule of Civil Procedure 23 or similar state statute.  *See* 28 U.S.C. § 1332(d)(1)(B).  Plaintiff expressly pled this action as a class action.  (Compl., at ¶¶ 38-39; *see also* Caption.)

45.     Plaintiff defines the class of individuals he seeks to represent as "all current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class" who Plaintiff alleges did not receive compliant meal or rest periods or premium payments, and/or did not receive accurate wage statements, and/or did not timely receive proper wages upon separation of their employment.  (Compl. at ¶ 38(b)-(c), (f)-(g).)[13]

46.     As evidenced in the supporting declaration of Amy Young, Pacific Gypsum employed at least 383 hourly, non-exempt employees in California during the time period of March, 2015[14] through present. (Young Decl., ¶ 10.)

### B.     Defendants Are Not A Governmental Entity

47.     Defendants are not a state, a state official or any other governmental entity. (Young Decl., ¶¶ 3-4.)

### C.     Plaintiffs' Citizenship Is Diverse From Defendants' Citizenship

48.     "Under CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).

---

[13]  As addressed above, in footnote 2, Plaintiff's descriptions of the class in terms of each type of violation he asserts constitute improper "failsafe" classes and are unascertainable as a matter of law. *Kamar*, 375 Fed. Appx. at 736 (A "failsafe class" is "a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established."); *see also Brazil*, 585 F. Supp. 2d at 1167.  Further Plaintiff's descriptions are the functional equivalent of asserting claims on behalf of all hourly, non-exempt employees in California.

[14]  Pacific Gypsum was initially formed in January, 2015 and did not employ Plaintiff or any individuals in California until March, 2015.  GMS has never employed Plaintiff and does not have any direct operations in California.  Consequently, Defendants' amount in controversy calculations are based on pay and time data through the dates of March, 2015 to present.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action                    16.

49.     CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any Defendants."    28 U.S.C. §§ 1332(d)(2)(A); 1453(b).

50.     According to the Complaint, Plaintiff resides in the state of California (Compl., at ¶ 2.)    Accordingly, Defendants allege that Plaintiff is a citizen of California. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled).

51.     For diversity purposes, the citizenship of a corporation shall be determined by looking to the state in which it has been incorporated and where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1); *Hertz Corp v. Friend*, 559 U.S. 77 (2010).  A corporation's "principal place of business refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Goens v. Adams & Assocs., Inc.*, 2017 WL 3167809, at *3 (E.D. Cal. July 26, 2017) *citing* Hertz Corp, 599 U.S. 77, 80-81.

52.     Defendants are incorporated under the laws of the State of Georgia and headquartered in Georgia.  (Young Decl., ¶¶ 3-4.)  The vast majority of Defendants' officers are located in Georgia, with others residing throughout the country, and the ultimate control and decisions affecting Defendants' activities are made from outside of California.  (*Id*.)  Accordingly, Defendants are citizens of a state other than California for purposes of CAFA jurisdiction.

53.     Minimal diversity of citizenship exists here because Plaintiff and Defendants are citizens of different states, in that Plaintiff is a California citizen and Defendants are citizens of Georgia with a principal place of business in Georgia.

**D.     Amount In Controversy Exceeds $5 Million**

54.     CAFA authorizes the removal of class actions in which, among other factors mentioned above, the amount in controversy for all class members exceeds five million dollars ($5,000,000).  *See* 28 U.S.C. § 1332(d)(2).  A Defendant is not required to produce "summary judgment-type" evidence to establish removability under CAFA. *See Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600 at *4 (N.D. Cal. June 14, 2013).  A removing defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S.Ct. 547, 554 (2014); *see also Sanchez v.*

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

17.

*Monumental Life Ins. Co.*, 102 F.3d 398, 403-404 (9th Cir. 1996) (defendant need only show by a preponderance of the evidence (that it is more plausible than not) that plaintiff's claimed damages exceed the jurisdictional minimum).

55.     Although Defendants expressly deny any liability for the damages alleged in Plaintiff's Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied, the Court must look to the allegations of Plaintiff's Complaint and presume that Plaintiff will prevail on his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994)) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability."). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [D]efendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F. 3d 395, 400 (9th Cir. 2010).

56.     The facial allegations in Plaintiff's Complaint and the facts that Defendants have submitted in support of removal, in addition to the total amount of penalties, attorneys' fees, and other monetary relief at issue in this action, are in excess of this Court's jurisdictional minimum. *See Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (facts presented in notice of removal, combined with Plaintiffs' allegations, sufficient to support finding that jurisdictional limits satisfied); *see also Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. Cal. 2013) (a Defendant "may remove when it discovers, based on its own investigation, that a case is removable.").

57.     Plaintiff's allegations combined with the very conservative calculations set forth below establish that the amount in controversy for (i) meal period premiums; (ii) rest break premiums; (iii) wage statement penalties; and (iv) waiting time penalties, combined with attorneys' fees, alone is at least **$$9,287,151** as detailed below.

### E.     Class Claims for Failure to Provide Meal Periods

58.     Plaintiff alleges that "Defendants **often** employ non-exempt employees, including the Plaintiff and all others similarly situated, for shifts of five (5) hours or more in length." (Compl., at ¶ 17.)  Plaintiff also asserts that "Defendants . . . maintained a **policy, practice, and/or procedure**

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

18.

1     that failed to authorize or permit Plaintiff and similarly situated hourly non-exempt employees to

2     take legally compliant meal breaks before the sixth hour of work." (*Id*. at ¶ 18.)  Plaintiff claims that

3     "Defendants **frequently** failed to provide Plaintiff and members of the Meal Period Class with meal

4     breaks prior to the end of the 5th hour for first meal periods." (*Id*. at ¶ 51.)  Plaintiff further alleges

5     that "Defendants maintained a **policy, practice, and/or procedure** whereby they failed to provide

6     their employees with premium wages for these non-compliant meal periods." (*Id*. at ¶ 19.)

7         59.      California law permits recovery of one additional hour of pay at the employee's

8     regular rate of compensation for each workday a meal period was not provided.  Cal. Lab. Code §

9     226.7.  The statutory period for recovery for a California Labor Code section 226.7 claim pursued

10     with a Business & Professions Code claim is four years.  *See* Cal. Civ. Proc. Code § 338(A) (setting

11     out a three-year limitations period); Cal. Bus. & Prof. Code § 17208 (explaining the three-year

12     statute of limitations can be extended to four years through the pleading of a companion claim under

13     the UCL).

14         60.      Plaintiff seeks to recover meal period premiums of "an additional hour of pay at the

15     regular rate" dating back four years from the filing of the Complaint to November 19, 2014.  *See*

16     Cal. Bus. & Prof. Code §§ 17200 *et seq*.; (Compl. at ¶¶ 38(b), 54, Count II, "Prayer for Relief" on

17     the Second Cause of Action.)

18         61.      Plaintiff as the "masters of his complaint" has elected not to limit the damage of the

19     claims asserted.  *See Muniz*, 2007 WL 1302504 at *2.  Indeed, Plaintiff's Complaint "includes no

20     fact-specific allegations that would result in a putative class or violation rate that is discernibly

21     smaller than 100%[.]" *Id*. at *4.  Plaintiff alleges that pursuant to "a policy and procedure" he and

22     other putative class members "frequently" failed to receive appropriate meal breaks and are thus

23     entitled to penalties. (Compl. at ¶¶ 18, 51.)  Assuming Plaintiff's allegations of a general **policy and**

24     **procedure** of failing to provide proper breaks are true, and taking into account Plaintiff's failure to

25     cabin his allegations in any way and, instead, pleading his claims as expansively as possible;

26     Defendants are entitled to assume a 100% violation rate for amount in controversy calculations.  *See*

27     *Coleman*, 730 F. Supp. 2d at 1150 (Plaintiff included no limitation on the number of violations, and,

28     taking his complaint as true, Defendants could properly calculate the amount in controversy based

Defendants' Notice to Federal Court of        19.
Removal of Civil Action

on a 100% violation rate."); *accord Ford*, 2014 WL 3377990, at *3 (where plaintiff alleged defendant "regularly" required class to work without pay, and implemented "systematic, company-wide policy to not pay rest period premiums," defendant's calculation as to amount in controversy based on "assumption of a 100% violation rate" was "reasonably grounded in complaint").

62.    The average hourly rate of Defendants' California-based hourly, non-exempt employees[15] during the period from March, 2015 through present is $17.72. (Young Decl., ¶ 14.) Based on Defendants' available time data from March, 2015 to present, there were 94,881 days[16] when a California-based hourly, non-exempt employee worked over 5 hours.  (Young Decl., ¶ 19.) As addressed above, Plaintiff's allegations fail to specify or even provide an approximate count of noncompliant meal periods.  Conservatively, assuming a meal period violation occurred each time[17] a California-based hourly, non-exempt employee worked over five hours, the meal period claims is approximately **$1,681,291.**[18]

---

[15] At this time, Defendants were only able to access the pay and time data of 289 of the 383 hourly, non-exempt employees in California working during this time period.  While time and pay data for the remaining 94 hourly, non-exempt employees is obtainable, it could not be accessed in a format that is easily manipulated (such as Microsoft Excel) in advance of the deadline for removal.  Thus, the average hourly rate is based on the average hourly rates of those 289 employees for whom Defendants did have readily accessible pay and time data for the relevant period.  (Young Decl., ¶¶ 14, 15.)

[16] Because Defendants were unable to access the time data of 94 hourly, non-exempt employees who worked during the relevant time period, the number of days where employees worked 5 hours or more is based only on those days worked by the 289 employees for whom Defendants had accessible data.  If Defendants were able to access the data for the remaining 94 hourly, non-exempt employees the number of meal-period eligible shifts would be even larger, thus Defendants amount in controversy calculations reflect a conservative estimate of the potential damages at issue for this claim.

[17] Even assuming Defendants conservatively utilized a 75% violation rate, the meal period claim during the relevant time period would place approximately **$1,260,968** in controversy.

[18] Because Defendants did not have readily accessible time data for 94 hourly, non-exempt employees who worked during the relevant time period, Defendants estimated the number of days in which the 94 hourly, non-exempt employees worked over 5 hours by reviewing the actual time data for all 289 hourly, non-exempt employees for whom Defendants had readily accessible time data and identifying the actual number of days in which these employees worked over 5 hours per shift. (Young Decl., ¶ 19.) Next, an average number of days where employees worked over five hours per putative class member for the relevant time period was calculated.  (*Id.*)  Defendants calculated this average by calculating the total number of days where employees for whom Defendants had data worked over five hours and dividing the sum total of days by the number of employees it had readily accessible time data for (289).  (*Id.*)  Defendants then determined that the average number of days where employees worked 5 hours or more per hourly, non-exempt employee during the relevant time

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

### F.    Class Claims for Failure to Provide Rest Breaks

63.    In Plaintiff's Third Cause of Action, Plaintiff alleges that "Defendants **often** employ non-exempt employees, including the named Plaintiff and others similarly-situated, for shifts longer than 3.5 hours in length." (Compl., at ¶ 20.)  Plaintiff also alleges that "Defendants employed a **policy and procedure** which failed to provide Plaintiff and other similarly-situated hourly non-exempt employees rest periods. Defendants also failed to pay employees one hour of pay at their regular rate of pay for each workday Plaintiff and other similarly-situated hourly non-exempt employees did not receive legally compliant rest breaks." (*Id.* at ¶ 23.)

64.    California law permits recovery of one additional hour of pay at the employee's regular rate of compensation for each workday a rest period was not provided.  Cal. Lab. Code § 226.7.  The statutory period for recovery for a California Labor Code section 226.7 claim pursued with a Business & Professions Code claim is four years.  *See* Cal. Civ. Proc. Code § 338(A) (setting out a three-year limitations period); Cal. Bus. & Prof. Code § 17208 (explaining that the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL as Plaintiff has done here).

65.    Plaintiff as the "master of his complaint" has elected not to limit the damage of the claims asserted.  *See Muniz v. Pilot Travel*, 2007 WL 1302504 at *2.  Indeed, Plaintiff's Complaint "includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%[.]"  *Id.* at *4.  Plaintiff as the "masters of his complaint" has elected not to limit the damage of the claims asserted.  *See Muniz*, 2007 WL 1302504 at *2.  Indeed, Plaintiff's Complaint "includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%[.]"  *Id.* at *4.  Plaintiff alleges that pursuant to "a policy and procedure" he and other putative class members "frequently" failed to receive appropriate rest breaks and are thus entitled to penalties.  (Compl. at ¶¶ 20, 23.)  Assuming Plaintiff's allegations of a general **policy and procedure** of failing to provide proper breaks are true, and taking into

period was 328.  (*Id.*)  Defendants then applied this average to the 94 hourly, non-exempt employees for whom it did not have readily accessible time data, reflecting an estimated **$546,343** in controversy for these employees.  (*Id.*)  The total amount in controversy for this claim, including the estimate for the 94 hourly, non-exempt employees for whom Defendants do not have readily accessible data, is **$2,227,634**.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

21.

account Plaintiff's failure to cabin his allegations in any way and, instead, pleading his claims as expansively as possible; Defendants are entitled to assume a 100% violation rate for amount in controversy calculations. *See Coleman*, 730 F. Supp. 2d at 1150 (Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate."); *accord Ford*, 2014 WL 3377990, at *3 (where plaintiff alleged defendant "regularly" required class to work without pay, and implemented "systematic, company-wide policy to not pay rest period premiums," defendant's calculation as to amount in controversy based on "assumption of a 100% violation rate" was "reasonably grounded in complaint").

66.    In *United Parcel Service, Inc. v. Superior Court (Allen)*, 196 Cal. App. 4th 57, 69 (2011), the Court held that should plaintiff sustain his burden of proof, he could be entitled to one hour of premium pay for one or more missed meal period and one hour of premium pay for one or more missed rest break in a single day.

67.    As explained above, the average hourly rate of Defendants' California-based hourly, non-exempt employees[19] during the period from March, 2015 to present is $17.72. (Young Decl., ¶ 14.)   Based on Defendants' time data from March, 2015 to present, there were 96,763[20] days when a California-based hourly, non-exempt employee worked over 3.5 hours.  (Young Decl., ¶ 19.)  As addressed above, Plaintiff's allegations fail to specify or even provide an approximate count of non-

---

[19] At this time, Defendants were only able to access the pay and time data of 289 of the 383 hourly, non-exempt employees in California working during this time period.  While time and pay data for the remaining 94 hourly, non-exempt employees is obtainable, it could not be accessed in a format that is easily manipulated (such as Microsoft Excel) in advance of the deadline for removal.  Thus, the average hourly rate is based on the average hourly rates of those 289 employees for whom Defendants did have readily accessible pay and time data for the relevant period.  (Young Decl., ¶¶ 14, 15.)

[20] Because Defendants were unable to access the time data of 94 hourly, non-exempt employees who worked during the relevant time period, the number of days where employees worked 3.5 hours or more is based only on those days worked by the 289 employees for whom Defendants had accessible data.  If Defendants were able to access the data for the remaining 94 hourly, non-exempt employees the number of meal-period eligible shifts would be even larger, thus Defendants amount in controversy calculations reflect a conservative estimate of the potential damages at issue for this claim.

Defendants' Notice to Federal Court of Removal of Civil Action

22.

compliant rest breaks.  Conservatively, assuming a rest break violation occurred each time[21] a California-based hourly, non-exempt employee worked an average of over 3.5 hours, the amount in controversy for the rest break claims is approximately **$1,714,640.**[22]

### G.    Class Claims For Failure to Pay All Prevailing Wages

68.    Plaintiff asserts a claim for failure to pay prevailing wages in his First Cause of Action.  (Compl., at ¶¶ 40-47.)  Plaintiff alleges that "Defendants failed to pay Plaintiff and similarly situated employees the prevailing wage" for their work on jobs which were subject to prevailing wage rates.  (*Id*. at ¶¶ 14-15.)   While Plaintiff alleges that he and the putative class members are owed "for all hours worked on public works projects, including overtime and double time hours worked on public works projects, at the proper prevailing wage rates" he fails to include any detail as to the extent of the amount of alleged prevailing wage work or wages owed or couch his allegations with any limitations as to the extent of recovery sought with respect to this claim.  (*Id*. at ¶ 16.)

69.    The average hourly rate of Defendants' California-based hourly, non-exempt employees during the period from March, 2015 to present is $17.72. (Young Decl., ¶ 14.) Assuming, in light of the general and expansive nature of Plaintiff's allegations, that Plaintiff and each putative class member (383 employees) seek recovery of at least at least two hours of

---

[21] Even assuming Defendants conservatively utilized a 75% violation rate, the meal period claim during the relevant time period would place approximately **$1,285,980** in controversy.

[22] Because Defendants did not have readily accessible time data for 94 hourly, non-exempt employees who worked during the relevant time period, Defendants estimated the number of days in which the 94 hourly, non-exempt employees worked over 3.5 hours by reviewing the actual time data for all 289 hourly, non-exempt employees for whom Defendants had readily accessible time data and identifying the actual number of days in which these employees worked over 3.5 hours per shift.  (Young Decl., ¶ 20). Next, an average number of days where employees worked over 3.5 hours per putative class member for the relevant time period was calculated. (*Id*.)   Defendants calculated this average by calculating the total number of days where employees for whom Defendants had data worked over 3.5 hours and dividing the sum total of days by the number of employees it had readily accessible time data for (289).  (*Id*.)  Defendants then determined that the average number of days where employees worked 3.5 hours or more per hourly, non-exempt employee during the relevant time period was 334.  (*Id*.)  Defendants then applied this average to the 94 hourly, non-exempt employees for whom it did not have readily accessible time data, reflecting an estimated **$556,337** in controversy for these employees.  (*Id*.)  The total amount in controversy for this claim, including the estimate for the 94 hourly, non-exempt employees for whom Defendants do not have readily accessible data, is **$2,270,977**.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

prevailing wage work per month for 3 years (the applicable statute of limitations) at a rate of $2.10 (the difference between Plaintiff's average hourly regular rate and the current average prevailing wage regular rate for a stocker job classification), this results in an amount in controversy of at least **$57,909.**

### H.    Class Claims For Failure to Pay All Vacation/PTO Wages

70.    With respect to his Fourth Cause of Action, Plaintiff seeks recovery of alleged unpaid and accrued vacation/PTO wages.  (Compl., at ¶¶ 63-69.)  Plaintiff alleges that he and each putative class member "failed to accrue vacation/PTO wages in accordance with Defendants' policy, practice, and procedure, which resulted in Defendants' failure to pay . . . all vacation/PTO wages pay that was due[.]"  (*Id.* at ¶ 66.)  While Plaintiff alleges that he and the putative class members "are entitled to recover the full amount of unpaid vacation pay," he fails to include any detail as to the extent of the alleged unpaid vacation/PTO wages or couch his allegations with any limitations as to the extent of recovery sought with respect to this claim.

71.    The average hourly rate of Defendants' California-based hourly, non-exempt employees during the period from March, 2015 to present is $17.72. (Young Decl., ¶ 14.) Defendants' policy and practice was to compensate vacation/PTO days based on an assumed 8 hour work day.  (*Id.* at ¶ 6.)  Assuming, in light of the general and expansive nature of Plaintiff's allegations, that Plaintiff and each putative class member seek recovery of at least 2 days of vacation/PTO wages per year, the amount in controversy for this claim is at least **$108,588.**

### I.    Class Claims For Reimbursement of Business Expenses

72.    In his Fifth Cause of Action, Plaintiff seeks to recover allegedly unreimbursed business expenses under Labor Code Section 2802.  (Compl., at ¶¶ 70-76.)  Plaintiff alleges that "Defendants employed a **policy, practice, and procedure** whereby Plaintiff and members of the . . . Class were required to use their own personal cell phones . . . without receiving full reimbursement for all employment-related expenses necessary in the discharge of their duties."  (*Id.* at ¶ 72.) Plaintiff further alleges that "Defendants failed to properly indemnify employees for the necessary expenditures incurred in the discharge of their duty including their regular tool and supplies

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

24.

expenses/losses[.]"  Plaintiff does not identify the types of tool(s) and supplies for which he claims he was not properly compensated.

73.    Based on Defendants' data, there were 383 hourly, non-exempt employees who worked for Pacific Gypsum in California from March, 2015 to present.  (Young Decl., ¶ 10.) Defendants routinely provide reimbursement to employees for necessary business expenses incurred in connection with job duties, including cell phone purchases, data usage charges, gas, mileage, travel, tools and/or supplies etc.  (*Id.* at ¶ 5.)  Therefore, assuming Plaintiff and each putative class member incurred an estimated $500 per year in necessary business expenses (or approximately $42 per month) for any category, or combination of categories, of business expenses—which Defendants are entitled to assume because Plaintiff has neither described in detail the alleged unreimbursed business expenses nor couched his unreimbursed business expenses allegations in any limited manner—the amount in controversy for this claim alone is **$749,921**.[23]

### J.    Class Claims for Inaccurate Wage Statements

74.    Plaintiff also alleges a violation of Labor Code section 226.  (Compl., at ¶¶ 77-88.) Labor Code section 226(a) requires that employers provide employees with "an accurate itemized statement in writing" listing specified information at the time wages are paid.  Labor Code § 226(a). Labor Code section 226(e) provides for penalties in the amount of "fifty dollars for the initial pay period in which a violation [of subdivision (a)] occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)."  Plaintiff's wage statement claim is governed by a one-year statute of limitations. Cal. Code Civ. Proc. § 340 (one-year statute of limitations governs claims for penalties).

75.    Based on Plaintiff's allegation that "Defendants knowingly and intentionally put in place practices which deprived employees of wages and resulted in Defendants' knowing and intentional providing of inaccurate wage statements" (Compl., at ¶ 84), putative class members would potentially be entitled to penalties for each wage statement issued because the itemized wage statement would be "inaccurate" for each pay period. Assuming Plaintiff and each putative class

---

[23] ($500/year= $41.66/month) X 47 months (March, 2015-present) X 383= **$749,921**.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

25.

member were entitled to the maximum potential recovery of $4,000 per employee, which would be a reasonable assumption in light of Plaintiffs' allegations, the amount in controversy for this claim alone is at least **$1,532,000**.[24]

### K.    Class Claim for Waiting Time Penalties

76.    Plaintiff's Seventh Cause of Action alleges that Defendants "failed to pay Plaintiff and members of the Waiting Time Class all wages earned and unpaid prior to termination[.]" (Compl., ¶ at 92.)  Plaintiff also alleges that "Defendants maintained a **policy or practice** of not paying hourly employees upon separation of employment wages for all unpaid wages[.]"  (*Id.*)

77.    The relevant statute of limitations for Plaintiffs' claim for waiting time penalties for failure to pay all wages owed at separation (Compl., at ¶¶ 89-98) is three years.  *See Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010).  Thus the relevant statutory time period for Plaintiff's alleged waiting time penalties claim dates back to November 19, 2015.

78.    A review of Defendants' personnel data reflects that 127 California-based hourly, non-exempt employees who worked for Defendants between November 19, 2015 and present have separated from employment with Defendants.  (Young Decl., ¶ 10.)  A single California employee who did not receive all wages owed under one or more of Plaintiff's many legal theories asserted in the Complaint could try to recover a full 30 days of waiting time penalties under California Labor Code section 203.  Based on Plaintiffs' allegations that "Defendants' failure to pay Plaintiff and members of the Waiting Time Class all unpaid wages or unreimbursed expenses prior to termination timely in accordance with Labor Code Sections 201 or 202 was willful" (Compl., at ¶ 93), thirty days of waiting time penalties would be owed to Plaintiff and members of the putative class.  *See Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998).  Accordingly, based on the 9.3 average

---

[24] Alternatively, from November 19, 2017 through February 6, 2019, the total number of initial pay stubs issued to Defendants' California-based hourly, non-exempt employees was 124, and the total number of subsequent pay stubs issued was 3,268.  (Young Decl., ¶¶ 9, 19.)  Thus, if Plaintiff was to establish that he and all California-based hourly, non-exempt employees were not provided with accurate itemized wage statements for which they are entitled to penalties and assuming, arguendo, that each employee during the statutory period was entitled to $50 for the initial pay stub and $100 penalty thereafter per pay period, not to exceed $4,000, the potential amount in controversy assuming Plaintiff and class members were entitled to less than the statutory maximum penalty for this claim is at least **$333,000.**

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of Removal of Civil Action

26.

hours worked per day by California-based hourly, non-exempt employees calculated using Defendants' personnel and time data during this time period, and the average hourly rate of $17.72 for California-based hourly, non-exempt employees who were terminated, the amount in controversy on the failure to timely pay wages at separation claim is **$627,872.**

L.    **Class Claim for Violation of California Business and Professions Code**

79.    Plaintiff's Eighth Cause of Action alleges that Defendants violated California's Business and Professions Code, sections 17200 et seq., by "[t]he unlawful conduct of Defendants alleged herein . . . [which] includes Defendants' use of policies and procedures which resulted in Defendants' failure to provide the following to Plaintiff and members of the California Class: prevailing wages where applicable; legally compliant meal periods or meal period premium wages; legally compliant rest periods or rest period premium wages;  accrued vacation pay, indemnification for necessary expenditures incurred by employees in the discharge of their duties; complete and accurate wage statements, and timely payment of final wages[.]"  (Compl., at ¶ 100.)  Business and Professions Code section 17206(a) provides for a civil penalty not to exceed $2,500.00 for each violation of unfair business practices.  While the civil penalty is recovered by the city attorney or State Attorney General, not by Plaintiff or putative class members, such civil penalties are still considered for determining amount in controversy where they are alleged in the Complaint.  *See American Guaranty Co. v. Caldwell*, 72 F.2d 209 (9th Cir. 1934) ("It is amount in controversy which determines jurisdiction, not the amount of the award.")  In light of Plaintiff's seven different alleged unfair business practice violations, Defendants conservatively and reasonably estimate that Plaintiff and each putative class member could recover at least $2,500—the penalty for only one violation.  Accordingly, based on Defendants' data, there were 383 hourly, non-exempt employees who worked for Pacific Gypsum in California from March, 2015 to present (Young Decl., ¶ 10), assuming a $2,5000 penalty for just *one* of Plaintiff's seven alleged unfair business practices, the amount in controversy for this claim is at least **$957,500.**

(7)    **Class Claim for Attorneys' Fees**

80.    Plaintiff also seeks attorneys' fees (Compl., "Prayer for Relief"), which the Court should consider and include in the amount in controversy since the California Labor Code allows

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

27.

1    such recovery. *See*, *e.g.*, *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)

2    (attorneys' fees provided by statute are properly included in evaluating the amount in controversy);

3    *Guglielmino*, 506 F.3d at 700 ("Section 1332(a)'s amount-in-controversy requirement excludes only

4    'interest and costs' and therefore includes attorneys' fees."). Attorneys' fees awarded in California

5    wage/hour class actions can total hundreds of thousands of dollars or more. *See*, *e.g.*, *McGuigan v.

6    City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of

7    $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010)

8    (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as

9    to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in

10   attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and

11   waiting time penalties); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1216-18 (2008)

12   (affirming award of $757,000 in attorneys' fees plus a multiplier that equated to total fees of

13   $1,199,500 in class case involving violations of a living wage ordinance, the California Labor Code,

14   as well as unfair competition and contract claims); *cf. Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F.

15   Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the

16   percentage method or the lodestar method is used, fee awards in class actions average around one-

17   third of the recovery."). The Court should therefore consider attorneys' fees of at least $1,857,430

18   as part of the amount in controversy.[25]

19                    **M.    Summary of Amount in Controversy**

20           81.    Plaintiff's allegations combined with the very conservative calculations set forth

21   above establish that the amount in controversy for (i) meal period premiums; (ii) rest break

---

[25] $1,857,430 represents approximately 25% of the amount in controversy calculated for purposes of this Notice of Removal, which is a conservative estimate of available attorneys' fees, given the total claimed damages at issue. *See Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent."); *Lo v. Oxnard Euro. Motors, LLC*, 2012 WL 1932283, at *3 (S.D. Cal. May 29, 2012) ("The Ninth Circuit has accepted as a benchmark for an attorneys' fees awards a twenty-five percent of the common fund recovery."); *Garnett v. ADT LLC*, 74 F. Supp. 3d 1332, 1337 (E.D. Cal.2015) (finding that, for purposes of analyzing amount in controversy under CAFA jurisdiction, "Defendants' fee estimation of 25 percent of recovery is a reasonable one."); *accord Morganstein v. Esber*, 768 F. Supp. 725, 727 (C.D. Cal. 1991) (awarding 25 percent of settlement amount to class counsel as fees).

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

28.

premiums; (iii) unpaid prevailing wages; (iv) unpaid vacation/PTO; (v) unreimbursed business expenses; (vi) wage statement penalties; and (vii) waiting time penalties, (viii) UCL penalties, combined with (ix) attorneys' fees, is at least **$9,287,151.**

| Claim | Amount in Controversy |
|---|---|
| Unpaid Meal Period Premiums | $1,681,291[26][27] |
| Unpaid Rest Break Premiums | $1,714,640[28][29] |
| Unpaid Prevailing Wages | $57,909 |
| Unpaid Vacation/PTO | $108,588 |
| Unreimbursed Business Expenses | $749,921 |
| Inaccurate Wage Statements | $1,532,000[30] |

[26] If Defendants were to conservatively use a 75% violation rate for Plaintiff's missed meal break claims, despite the general and expansive nature of Plaintiff's allegations, the amount in controversy for this claim would still be **$1,260,968** and the total amount in controversy for Plaintiff's claims, assuming all other amounts in controversy were as reflected in the above summary, would still exceed $5 million (**$8,761,747**).

[27] The amount in controversy for Plaintiff's missed meal breaks claim does not reflect any potential damages for the 94 employees for whom Defendants did not have readily accessible time data at the time of Removal. If Defendants were to include the estimated amount in controversy, based on average number of days where employees worked 5 or more hours, for those 94 employees, the total amount in controversy for this claim would be **$2,227,634** and the total amount in controversy for Plaintiff's claims, assuming all other amounts in controversy were as reflected in the above summary, would still exceed $5 million (**$9,970,080**).

[28] If Defendants were to conservatively use a 75% violation rate for Plaintiff's missed rest break claims, despite the general and expansive nature of Plaintiff's allegations, the amount in controversy for this claim would still be **$1,285,980** and the total amount in controversy for Plaintiff's claims, assuming all other amounts in controversy were as reflected in the above summary, would still exceed $5 million (**$8,751,326**).

[29] The amount in controversy for Plaintiff's missed rest breaks claim does not reflect any potential damages for the 94 employees for whom Defendants did not have readily accessible time data at the time of Removal. If Defendants were to include the estimated amount in controversy, based on average number of days where employees worked 3.5 or more hours, for those 94 employees, the total amount in controversy for this claim would be **$2,270,977** and the total amount in controversy for Plaintiff's claims, assuming all other amounts in controversy were as reflected in the above summary, would still exceed $5 million (**$9,488,434**).

[30] If Defendants were to assume that Plaintiff and the class members did not seek to recover the maximum statutory penalties for this claim, the amount in controversy for this claim would be **$333,000** and the total amount in controversy for Plaintiff's claims, assuming all other amounts in controversy were as reflected in the above summary, would still exceed $5 million (**$7,252,576**).

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Defendants' Notice to Federal Court of Removal of Civil Action

29.

| | |
|---|---|
| Waiting Time Penalties | $627,872 |
| UCL Penalties | $957,500 |
| Total of claims alone | **$7,429,721** |
| Attorneys' Fees | $1,857,430 |
| **Total** | **$9,287,151** |

82.     In sum, Defendants have sufficiently established that the amount in controversy exceeds the $5 million jurisdictional minimum for CAFA removal.

## VIII.   CONCLUSION

83.     Because Defendants have satisfied all CAFA requirements and have and/or will provide proper notice of removal, Defendants respectfully requests the above-entitled action be removed from the Contra Costa County Superior Court to the Northern District of California pursuant to 28 U.S.C. § 1332(d).

Dated:          February 14, 2019          Respectfully submitted,

/s/ *Maggy M. Athanasious*
MAGGY M. ATHANASIOUS
LITTLER MENDELSON, P.C.
Attorneys for Defendants

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Defendants' Notice to Federal Court of
Removal of Civil Action

30.